Please call the first case. 11-364 Progressive Premier Insurance Company, Registry Staff. Good morning, Your Honor. Security Fire Rises for Occidental. Good morning. Tom Buck on behalf of Progressive Premier Insurance Company of IL, Plaintiff, Counter Defendant, Annapolis. Okay, you're going to have 15 minutes each to argue. The appellant, you will have rebuttal time reserved from that 15 minutes, whatever time you have on your rebuttal. Okay? Thank you. Is that fine? Very good. The appellant, you may proceed. Good morning again, Your Honor. Security Fire Rises for Occidental Fire and As you know, this is a case that involves insurance coverage issues regarding a truck car accident that occurred back in May of 2004. The two insurance policies involved are a trucking policy, which was issued by Occidental Fire and Casualty Company, and a non-trucking policy issued by Progressive Premier Insurance Company. From Occidental's point of view, what the driver of the truck and owner of the truck, Christoph Imiljanovic, was doing at the time of the accident is essentially what dictates the outcome of the case. At the time of the accident, Imiljanovic had signed a contractor's operating agreement with SSTS, by which, or pursuant to which, he was going to, at some point in time in the future, begin hauling freight for SSTS. That had not yet happened when the accident occurred. He was at the SSTS offices the morning of the accident, signed the agreement, left, and he left to go have his truck, which he had just bought, checked out by a mechanic, and to pick up a friend. Although at the meeting with SSTS, he had been given placards which identified SSTS as the carrier that he was going to haul freight for with SSTS's operating authority numbers on it, those had not yet been affixed to the truck at the time of the accident. He was not operating the truck at the time of the accident, pursuant to the operating authority of SSTS. He was not hauling any freight for SSTS. He was not hauling a trailer given to him by SSTS. He had not been assigned a load. He had not received any dispatch instructions. Why would it matter whether he attached the signage that your people gave him? Because in the trucking industry, attaching the placards is the evidence that you are operating your truck, pursuant to the operating authority of the trucking company that you signed the agreement with. You can't haul freight for a trucking company unless you have operating authority. The trucking company gives you that operating authority. The placards that you put on your truck identifies to police. He had them, right? He had them. He had them, but at the time of the accident, he did not have to have any trucking company's operating authority to drive that truck. He could drive the truck for whatever reason he wanted to, aside from working for SSTS. Take it to the gas station, take it to the store, take it to his home, take it to pick up a friend, which he was doing at the time. And if he wasn't operating the truck on behalf of SSTS at the time of the accident, it is our position that Oxnell's policy would not apply. There's three different symbols on Oxnell's policy that define what autos are covered under the policy. Do you still agree it's number 47? You and your opponent, do you both agree with that? It's number 47 in the policy. We agree with that. I think they do too. I think in their brief they acknowledged that it wasn't 46 or it wasn't 50. So, hired auto. Was it a hired auto at the time of the accident? He had signed the operating agreement, so I think we concede it was a hired auto, but that doesn't define whether there was coverage or not. Then you have to go to the next step and analyze whether at the time of the accident, Emil Johnowitz was an insured. Looking at what section of the policy? Looking at the definitions of insured in the policy. Which one are you looking at specifically? I am looking at paragraph  Paragraph C of the definition of who is insured, which is right in the policy, I think in the record it's page C1168, that has the section 2, which is liability coverage, and paragraph 1 under the paragraph A coverage, paragraph 1, who is insured, contains definitions of who an insured is. A, B, C, D, and E. Progressive argues that B applies because SSTS had given Emil Johnowitz permission to use his own truck. Our position is you can't give somebody permission to use their own truck for whatever they want to use it for. This provision does not apply because at the time of the accident, Emil Johnowitz had left our premises, could use his truck for whatever he wanted to use it for. We had given him no instructions in terms of picking up freight, attaching a trailer, transporting a load. He was told to get his truck checked out. He was told to go to a mechanic or something and get it checked out. The only possibility under the agreement was to have his truck in proper operating condition in order to transport freight for SSTS. He had also just bought the truck and I think it's undisputed, it's an undisputed fact that he was going to a mechanic, he was going to pick up a friend, and going to a mechanic. The question is what was he going to the mechanic for, to have his truck checked out? We were not able to take Emil Johnowitz's deposition in this case because he was not able to be found, so we're using his testimony from the underlying personal injury case and all we have, I think, in his deposition from that case is that he was having his truck checked out and he was going to pick up a friend. Now, you can have a truck checked out, when you just buy a vehicle you go to have your vehicle checked out to make sure you're getting what you paid for. He also could be having his truck checked out to make sure that it was working properly in order to, in his words, he was unemployed at the time, he wanted to start his own business, that business was going to be driving a truck for a trucking company. He needed to have his truck in proper operating condition for whatever company he was going to work for. So are you saying there's no facts and affidavits in the record anywhere that says what was going on with him that day, why he was going to where he was going? The only thing that's in the record is his deposition from the underlying case. And in his deposition from the underlying case he wasn't asked in great detail about that because in the complaint in the underlying case, there were no allegations that he was working at the time, there were no allegations against SSTS at all. Basically the only allegations in the underlying complaint were that he was negligent in the way he drove his truck and the negligence approximately caused injuries to Ms. Horowitz. I mean, there's nothing in the underlying complaint if you look at it that would give you any indication that SSTS was involved at all at that time. And the police report, the police who investigated the accident confirmed that there was no trailer, confirmed that there were no placards. He said that if there had been any discussion about SSTS and their role in what he was doing at the time, that would have been included in his report. Emil Janowitz never talked about SSTS to the police officer who investigated the accident and he never said he was doing any work for SSTS. Well, why wouldn't we follow Padgett against Occidental Insurance Company where Padgett is driving for Ace Duran and then there's an exclusion in Occidental's policy just like he's driving home from a terminal without a trailer and he's going home. And so, but Occidental's position was at trial and on appeal and was upheld was that he was actually, I don't want to say an employee of, but he was to be insured by Ace Duran. He was excluded from Occidental's policy, which again is apparently very close to what Progressive's policy is. Well, in the Padgett case he was still under dispatch at the time of the accident. There was no dispatcher at the time of this accident. He was going home, right? Empty? Well, but... No trailer I should say. But he had the placards on his truck, he had delivered a load, he was going home going to wait for his next assignment, but you're under dispatch until you get back to wherever you started from before you left with the load. He had, although he had delivered the load and dropped the trailer, he had not gotten back to his original point of debarkation. Did his employment contract or whatever you want to call it with SSTS require exclusive use of his truck for SSTS? In the business of trucking. Not for all purposes. If he was going to drive, if he was going to transport freight, if he was going to transport freight with a truck, yes. He had to do it for SSTS. He didn't have to accept any loads for SSTS. They could assign him a load, he could say I don't want to do that. He couldn't accept any loads from anybody else? He could with SSTS's permission. Okay. Counselor, you filed a motion for summary judgment in the trial court, correct? Correct. And throughout your briefs here, you claim that there are genuine issues of material fact. Correct? Alternatively. My position is, number one, the court was wrong in concluding that Axnel's policy applied. The court was wrong in concluding that progressive policy did not apply as a matter of law. And either progressive policy did apply, Axnel's did not apply, or they both applied and the other insurance clause makes progressive policy primer. Well, isn't there a case that says in the situation where there's motions for summary judgment across motions for summary judgments, there are no issues of fact then? It's just an issue of law? Well, the issue I think that the facts that we have to decide the motions are not disputed. What could be disputed are inferences that can be drawn from the facts. And that's, to me, that's where there's a little bit of a distinction there. And in the inferences that I think there's two inferences that can be drawn from the undisputed fact that he was going to have his truck checked out by a mechanic. Number one, to make sure that it worked properly so it could work for SSTS. Number two, he just bought the truck so he was going to make sure that the truck worked properly because he had just paid somebody money for a truck. And if the truck didn't work properly, he wasn't going to keep the truck. I mean, I think those are both reasonable inferences to be drawn from that undisputed fact. That was argued, right? So when you had your hearing on both sides of the hearing on their both motions for summary judgment, that was argued, was it not? It was. Now, what happens often in, frankly, when people ask us to send cases back, if summary judgment was improperly granted as an issue of material fact, what new fact would be brought to the trial courts? Let's assume we buy that alternative argument issue phrasing. What will happen down below on remand? What new evidence do you have? Well, I think that we would continue to try to locate Mr. Ilmuljanowicz to see if we can get more details of exactly what was going on and what he was doing at the time. But that would be the only source of new evidence, right, if you're able to find the driver, right? That's correct. Then why would you send it back? Well... In the hope that you find him? But, yes, that's true. But, alternatively, our argument also is that as a matter of law, the accidental policy does not apply. Because it doesn't he doesn't fall within the definition of an insured, even though he may have had a covered auto, it doesn't fall within the definition of insured, and therefore there's no he'd become insured. He'd become insured when he gets a dispatch order from SSTS. Oh, he's got to have a job in his hand ready to go. Right. And in all... He's not liking the dispatcher giving him a job to go. He's not insured. He's insured by Progressive. Okay. SSTS's policy was to have all of these vehicles inspected and serviced by a mechanic before transporting a job. Correct. It was... Their policy. That was part of the agreement, and it was the owner of the truck's responsibility to have that done. The responsibility to maintain his truck was his, not SSTS. After signing the contract with this Chris Sandrick signed it, he was told, go take your truck, get it inspected. Which he did. But he picked up a friend, but it appears that it's clear he was on his way to... That's only a mere three hours after signing the contract, but he was fulfilling a direction of STS. He was on his way to the mechanic. Again, it's our position that there's a reasonable inference that he was on his way to the mechanic to make sure that he got a properly operated... On what basis is there a reasonable inference? Where in the record is there anything that substantiates a reasonable inference that he's doing if only for his own purpose? That he had just bought the truck. I think that that is in the record. Notwithstanding this, Chris Sandrick told him. It's a policy of the company you have to have inspected, so he's following up, and he's doing that. How does it magically become some sort of mission on his own, for his own purpose? Well, we don't know. I mean, he was picking up a friend for some reason, too. Well, what in the record is there to substantiate that? In the record, there is testimony from him that that morning, he had just bought the truck, he'd gone to SSTS, he signed this agreement, so he's going to a mechanic. The reasonable inference is he's going to a mechanic for one of two reasons, or both. One, to have the truck checked out to make sure that he's getting what he paid for, or secondly, to make sure the truck operates properly for his new job that he is going to get with SSTS. All the cases that are cited by Progressive, the driver in those cases was under dispatch, had either picked up a load, was going to pick up a load, or was going back to wherever they started their trip from in order to conclude that particular assignment. But they all had dispatch orders. There were no dispatch orders in this case. He did not have a load to pick up, a load to drop off, a trailer on his truck, or a placard on his truck, and the Progressive policy is what a trucker buys, the non-trucking policy is what a trucker buys when you're not working for a truck company at the time of an accident. These policies throughout the industry, the trucking industry, tend to be pretty much provide for the same things, do they not? Well, I think generally, yeah, there's a trucking policy and a non-trucking policy for every truck that's on the road. There may be nuances to each policy in terms of, you know, different types of phraseology, but generally speaking, yes, I agree with that. They cite Piaget, or actually you cite Piaget, in Frankhart for the proposition that when people are going home, or to get gas in Frankhart, home and gas in a home in Piaget, the truck is covered by the employer, is a word I would use to understand that's not, I don't mean in a term of art. What's your best case to say that when somebody's not pulling freight that they're covered by somebody else? Well, my best case is that these cases that the Progressives are relying on don't give them the authority, they actually support my position, because those cases all say that when the trucking policy applied, the driver was under-dispatched, had placards on his truck, and was either going to get a load, or had just gotten done dropping off a load, and in this case, that hasn't happened. There was no, the truck was not being used in the business of SSTS to transport or to pick up a load. And that's the case that I believe, and Oxnard believes, makes this distinguishable from the cases cited by Progressive in terms of whose policy is covered. Progressive is relying on a contingent liability endorsement, which is, in effect, an exclusion. It's got to be construed against them, the wording of it, and it's our position that our policy does not apply, Progressive's does apply, but if they both apply, then theirs is primary, ours is excess, and that issue was never even addressed by the trial court. The trial court did not get that far. So, in fact, we request that this court reverse the orders of the trial court, and either do one of two things, find that Oxnard's policy does not apply as a matter of law, that Progressive's does apply, or that they both apply, and that the other insurance clause makes Progressive's policy primary. Thank you. Thank you. You'll have five minutes to rebuttal. May it please the court, Tom Buck on behalf of Progressive. Finally, Occidental concedes that the tractor is a covered auto because it was leased on the morning before the accident. It's taken a long time to get there, but finally we have that concession by Occidental. What I found interesting about that point was that the reason Occidental originally denied coverage was because it was taking the position that the tractor had to be a specifically described auto on the policy. So when the denial letter was sent in January of 2008, when the affidavit from the Occidental representative was presented to the trial court, the trial court was told this was a specifically described auto, and it's not covered because it wasn't listed on the policy until June 8th of 2004, about three weeks after the accident. Well, that issue has been resolved today because now Occidental concedes it's a covered auto. And if you read the Occidental policy, that leased vehicle was covered at the moment of leasing. There is no provision in the policy that states that a leased auto is not covered until it's listed on the policy. There's no provision anywhere. Occidental was asked that by the trial court, and Occidental denied it. But he doesn't argue that. I mean, he does argue that in his brief, and he argues the no-loss doctrine and all of that, of course, as you point out, would be not worth breath because of the cases of Smith and American Freedom Insurance v. Smith. But why don't you address what he argued, which is that you have to have a trailer. You have to have the placards attached. Sure. The definition of a covered auto is set forth in the Occidental policy on page 26 of Progressive's appendix. Covered auto includes hired autos, which are defined as only those autos you, the name insured, SSTS leases. The definition doesn't require a hired auto to have a trailer attached. It doesn't define the hired auto as one with placards in place, and it doesn't define a leased auto as one that's under dispatch. So according to Occidental's definition of covered auto, that tractor is covered irrespective of placards, regardless of whether a trailer is attached, and regardless of whether the truck is under dispatch. And the same is true with respect to the definition of insured driver, a permissive driver, which is found on page 27 of Progressive's appendix, where it defines an insured to include anyone using with SSTS's permission a covered auto it had leased. And there's no question that Mr. Emil Janowitz had permission to use his tractor. No question at all. First of all, it doesn't condition a permissive driver to one who's driving with placards on a truck, or it doesn't condition a permissive driver to one who's under dispatch. As long as he has permission, regardless of use, that driver is going to be covered by the Occidental policy. So are there any restrictions at all? Let's say he was taking the truck to a party or whatever on a frolic of some kind. Under the Occidental policy, it is covered. Absolutely covered. Yes. What facts are there in the record, either from affidavits or  Sure. There are two witnesses who testified as to that subject matter. First was Mr. Emil Janowitz when he was asked at his deposition in the tort case where he was headed at the time of the accident. And his response was that he was supposed to pick up a friend and supposed to take the truck to a mechanic. It's found at page 1237 of the record. Next question, was there a problem with the truck? Answer, no. They were supposed to do maintenance on it, checking everything out, supposed to start a new job. Question, were you visiting a friend? I called a friend earlier and I told him to come with me so I could drop my truck off at the mechanic. Well, let's go to that. Sure. You're driving a truck or any kind of vehicle. You're going to the garage and you want your friend to apparently give you a ride back. Does he get in your vehicle and you're both driving your vehicle where you drop it off? How is he going to give you a ride back? It's not specifically set forth in the record, but we also have the testimony of the general manager, which is very important in this case, because he fills in the details. What he testifies to is that when the lease is signed that morning, it's now under the exclusive use and control of the motor carrier. Emil Janowitz had been employed by the motor carrier. The president of the company admitted in his deposition that Emil Janowitz had authority to operate the truck, which he had to have, because now it's under the exclusive control of the lessee. He'd been instructed by the motor carrier to have his vehicle inspected and maintained, and he believed he was following that instruction at the time of. Now, the reason why that's so important is because that's business use, is that it served the trucking company's interests in three ways. One, it made sure that the trucking company was in compliance with federal and state regulations. Two was safety. And the third reason, which was testified to by Alex Sanderzick, was that they wanted to make sure that the truck was ready to go whenever the motor carrier wanted to use it. Now, why isn't that personal use? It's not personal use in this reason for two very important reasons. One, this particular inspection was done at the request of the motor carrier. And two, the inspection was necessary in order for the truck to be used in the motor carrier's business. So when Mr. Emil Janowitz testifies he's taking his truck because he wanted to start a new job, that's exactly what he's talking about. He has to have his truck inspected before it can begin hauling freight for the motor carrier, which took place three days later on May 15th, he started hauling. Under your definition of permissive driver, though, would there be any circumstances under which a progressive's policy could be implicated? Yes, any pure personal use. For example, if Mr. Emil Janowitz were operating his tractor before the lease was entered into for his own personal reasons. Under that policy, so after he gets hired, what are you insuring? If Mr. Emil Janowitz is using the tractor for a reason not connected with the motor carrier's business and it's a personal use for his own individual use, then he's covered by the progressive policy. At the same time, he's still covered by the accidental policy because the accidental policy is not limited to the vehicle being used in the motor carrier's business. It's broader coverage than that. Counsel, what about the argument your opponent makes that insurance follows the vehicle or follows the car? It does until there's an exclusion. That's why we cited to the Franker case and the Simpson case because that Illinois law holds that this type of exclusion is valid and enforceable. That's the reason we cited to those cases. I don't think there's any question that the truck was being used in furtherance of the motor carrier's business at the time this accident took place. Now, we're asking that the judgment be affirmed for two reasons. One, because the findings made by the trial court were based upon undisputed facts. And the second is that there was no error of law in the conclusions reached by the trial court. And when we finally get to the end of it, the undisputed facts are really quite simple. One, the vehicle had been leased by the motor carrier. Two, Mr. Emil Janewicz had been given permission by the motor carrier to operate that tractor. And three, it was being operated in furtherance of the motor carrier's business at the time of the accident. Those are the three basic undisputed facts that the trial court based its rulings on. Therefore, we think that the summary judgment was both appropriate and proper. We'd ask that the judgment be affirmed. Thank you for allowing oral argument. Just a couple of very quick points in rebuttal. First, with respect to the covered auto issue on Oxnell's policy, even if the truck was a covered auto, as I argued before, that doesn't determine in and of itself that there's coverage under the Oxnell policy. There has to also be, he has to also fit the definition of an insured and Oxnell's position is that he did not fit the definition of insured. The one definition that he, there were actually two definitions that were, I think, brought up in the context of the case. One of which is the permissive use definition, which we already discussed. The second of which was the definition subparagraph C, the owner or anyone else from whom you hire or borrow a covered auto, I'm sorry, subparagraph D, the owner or anyone else from whom you hire or borrow a covered auto is not a trailer while the covered auto is being used exclusively in your business as a trucker and is being used pursuant to operating rights granted to you by a public authority. He was not using his truck at the time of the accident pursuant to operating rights granted to SSTS. He was, he didn't have to use, he didn't have to have those operating authority rights to take his truck to a mechanic or to take his truck to pick up a friend. So it gets back to the issue of permissive use and our position is that Oxnell's policy applies, the entire policy is a trucking policy. It applies when a truck is being used in the business of SSTS as a matter of law that was not being done here. He was using it to pick up a friend, which is not in the business of SSTS and to have the truck checked out and I've already argued what I believe our reasonable inference is as to having the truck checked out. There was a question as to whether under what type of facts would a progressive policy ever apply and counsel I think finally conceded that there are some instances where if he was taking the but even then his argument was that in those situations Oxnell's policy would still apply, which I think if you look at the intent of the policies, there's two policies and the intent of the policies, which is something that you do when you interpret an insurance policy. Oxnell's policy is to cover the truck when it's being used on the business side. Progressive policy is being used to cover, is there to cover the truck when it's not being used on the business side and if both policies apply, then you go to the other insurance clauses and that makes progressive policy I think undisputedly primary in this situation. Let me ask you a question. Let's say this was ten days after they signed the lease on the truck and he had had dispatches and used his truck for hauling whatever back and forth and the fellow says to him I don't think you've given me enough facts because it depends on was the placard on the truck? In this case it wasn't. Was he still under dispatch? No, he's going to get the truck repaired or checked. Same situation, only different... Well, if he said go get the truck checked and then we've got a load for you to pick up after that, yeah. So it would not apply if he just said get that thing checked out and come on back, right? No, no. So again, it is the position of Occidental that the court below erred in finding Occidental's policy did apply that progressive policy did not apply and also they're not getting to the issue of other insurance if both policies applied which would make progressive policy primary so we ask that this court do one of two things, either reverse the trial court send it back down to the trial, reverse the trial court, send it back down to the trial court to resolve those issues of dispute of fact at a trial or alternatively to find that as a matter of law Occidental's policy did not apply progressive's did or they both did and progressive's was primary. Thank you very much. Thank you. Case is taken under advisement.